NOT FOR PUBLICATION (Doc. No. 14)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| DONNA PHILLIPS, | : |
| Plaintiff, | : |
| v. | : Civil No. 09-1706 (RBK/AMD) |
| TROOPER GARRETT CULLEN and STATE OF NEW JERSEY, | : **OPINION** |
| Defendants. | : |

**KUGLER**, United States District Judge:

This matter arises out of Plaintiff Donna Phillips' arrest by Defendant Trooper Garrett Cullen for driving while intoxicated. Plaintiff claims that Trooper Cullen stopped and arrested her in violation of the Fourth Amendment and Article I, Paragraph 7 of the New Jersey Constitution, which prohibit unreasonable searches and seizures. Plaintiff asserts claims for assault and battery, false imprisonment, false arrest, malicious prosecution, and violation of her constitutional rights to be free from unreasonable searches and seizures. Defendants now move for summary judgment denying Plaintiff's claims. Because the undisputed facts establish that Trooper Cullen stopped Plaintiff based on a reasonable articulable suspicion that she committed a traffic violation, and because Trooper Cullen had probable cause to arrest Plaintiff after a lawful investigation, the Court grants Defendants' motion for summary judgment.

**I.     BACKGROUND**

On the evening of April 18, 2008, at approximately 10:30 p.m., Plaintiff drove to a party in Philadelphia, Pennsylvania. While at the party, Plaintiff claims that she drank two mixed

1

alcoholic beverages of approximately eight ounces each. Plaintiff drove home from the party at approximately 2:30 a.m. She had two friends with her in the car, one of whom vomited in a bag in the back seat of the car.

While driving along New Jersey State Highway 42, Trooper Cullen observed Plaintiff's vehicle "failing to maintain a lane of travel." (Cullen Dep. 12:14-15). Upon observing that traffic violation, Trooper Cullen activated his motor vehicle camera and initiated a traffic stop.[1] When Trooper Cullen approached Plaintiff's vehicle, he "detected the odor of consumed alcoholic beverage emanating from within the . . . vehicle." (Ex. F in Supp. of Def.'s Motion for Summ. J.). He also observed vomit in the backseat. (Cullen Dep. 25:18-26:8). He then asked Plaintiff for her license and registration and asked whether she had been drinking. Plaintiff gave him her license and registration and told him that she had been drinking. Trooper Cullen retained Plaintiff's documentation and asked Plaintiff to exit the vehicle for a field sobriety test.

Plaintiff performed several standard sobriety tests, including the so-called alphabet test, walk-and-turn test, and one-legged test. According to Trooper Cullen, Plaintiff was unable to complete the one-legged test, which involves standing on one leg for thirty seconds, or the walk-and-turn test, which involves walking heel-to-toe for nine steps, turning around and walking back in the same manner. (Cullen Dep. 16:14-19:13). Specifically, Trooper Cullen claims that while performing the one-legged test, Plaintiff almost fell in front of oncoming traffic. Plaintiff performed the sobriety tests in front of her vehicle. Thus, the camera does not clearly record Plaintiff's performance. However, the footage does show that Plaintiff lost her balance during the one-legged test, and the audio captures Plaintiff's struggles in recounting the alphabet.

---

[1] Plaintiff submits a recording of the video footage from Trooper Cullen's camera. Defendants do not oppose this submission or contest the recording's authenticity. In fact, Defendants rely on the recording in their motion papers. Thus, the Court viewed and considered the recording in deciding this motion.

Plaintiff claims that she initially struggled with the tests because she was wearing high heels and the walking surface was gravel. However, the video shows that she took her shoes off before she fell performing the one-legged test.

According to Trooper Cullen, after administering the sobriety tests, he told Plaintiff to sit in her car and wait until he returned. (Cullen Dep. 20:1-7). After ensuring that Plaintiff was in her vehicle, he went to his vehicle with Plaintiff's license, registration, and insurance card. While Trooper Cullen was in his vehicle "calling in" necessary information, Plaintiff drove away. (Cullen Dep. 21:4-24). Plaintiff testified that when Trooper Cullen told her to get back in the car, she assumed that everything was "okay" and that she could leave, but she admits that she does not remember him saying that she could leave. (Phillips Dep. 44:16-21).

When Plaintiff pulled away, Trooper Cullen pursued her. Plaintiff did not immediately pull over and Trooper Cullen had to sound his siren to get her attention. She eventually pulled over about a quarter of a mile further down the road. Plaintiff explained that she forgot about her license, registration, and insurance card because she was nervous. At that point, Trooper Cullen arrested Plaintiff for operating a vehicle while under the influence of alcohol. He explained his decision to arrest Plaintiff as follows:

> Q: And why [did you place Plaintiff under arrest]?
>
> [Trooper Cullen]: Discretion, the totality of the circumstances after everything that happened.
>
> . . . .
>
> Committing a motor vehicle infraction, smelling alcohol when I went to the car, vomit in the back seat, telling her to stay there while I go back to my car, her pulling off again for a second time, hitting the siren button trying to get her attention. That's the totality of the circumstances.

(Cullen Dep. 25:15-26:2).

3

Trooper Cullen took Plaintiff to the Bellmawr Barracks, where Plaintiff consented to a breathalyzer test, which was performed approximately forty-five minutes after her arrest. The test showed a blood-alcohol content of 0.02, which is below the 0.08 legal limit. See N.J. Stat. Ann. § 39:4-50. Trooper Cullen did not charge Plaintiff with driving under the influence. Instead, he charged her under N.J. Stat. Ann. § 39:4-88b, Traffic on Marked Lanes – Unsafe Lane Change, and N.J. Stat. Ann. § 39:3-29, Failure to Possess Driver's License or Registration. The Bellmawr Municipal Court dismissed both charges against Plaintiff.

Plaintiff admits that she did not suffer any kind of physical injury or harm as a result of her stop and arrest. (Phillips Dep. 71:15-71:17). She also admits that she has not seen a doctor or therapist. Id. She acknowledges that she never saw any sort of publication referencing her arrest and that nobody ever mentioned such a publication to her. (Phillips Dep. 72:6-73:18). She further concedes that during the traffic stop she was not afraid of Trooper Cullen and that she found nothing about his attitude or actions to be offensive or insulting. (Phillips Dep. 37:15-38:12).

Plaintiff sued Trooper Cullen and the State of New Jersey in the Superior Court of New Jersey, Law Division. Defendants subsequently removed the matter to this Court. Plaintiff asserts seven ill-defined claims. Count I asserts claims for "false arrest, false imprisonment, illegal search and seizure, deprivation of liberty and property, invasion of privacy, intentional and negligent infliction of emotional distress and serious mental and physical pain and suffering" based on Plaintiff's allegation that Trooper Cullen did not have probable cause to stop or arrest her under the United States or New Jersey constitutions. (Compl. ¶ 8). Count II is a claim for assault and battery. Count III appears to be a claim for false arrest and assault and battery predicated on negligence. Count IV appears to be a claim for false arrest and assault and battery

predicated on recklessness. Count V alleges that the State of New Jersey is liable for Trooper Cullen's alleged infringement of Plaintiff's constitutional rights. Count VI asserts a claim against the State of New Jersey for failure to properly train Trooper Cullen. Count VII does not assert a specific claim but requests compensatory and punitive damages, interest, attorneys' fees and costs against the State of New Jersey and Trooper Cullen. Defendants now move for summary judgment denying Plaintiff's claims.

## II.     LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, the Court is not to make credibility determinations regarding witness testimony. Sunoco, Inc. v. MX Wholesale Fuel Corp., 565 F. Supp. 2d 572, 575 (D.N.J. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

However, to defeat a motion for summary judgment, the nonmoving party must present competent evidence that could be admissible at trial. See Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995). The nonmoving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions, conclusory allegations or suspicions" to establish the existence of a genuine issue of material fact. Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982) (citation omitted); see Fed. R. Civ. P. 56(e). "A party's failure to make a showing that is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will

5

bear the burden of proof at trial' mandates the entry of summary judgment." Watson v. Eastman Kodak Co., 235 F.3d 851, 857-58 (3d Cir. 2000) (quoting Celotex Corp., 477 U.S. at 322).

### III. DISCUSSION

Plaintiff predicates all of her claims on whether Trooper Cullen lawfully stopped and arrested her.[2] Thus, if Trooper Cullen lawfully stopped and arrested Plaintiff, all of her claims fail as a matter of law.[3] See Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988) (holding that to establish a claim for false arrest, a plaintiff must show that the arresting officer lacked probable cause for the arrest); Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003) (holding that to establish a claim for malicious prosecution, a plaintiff must show that the criminal proceeding was initiated without probable cause); D'Arrigo v. Gloucester City, No. 04-5967, 2007 U.S. Dist. LEXIS 44316, at *27 (D.N.J. June 19, 2007) (holding that probable cause for an arrest is an "absolute defense" to a plaintiff's "New Jersey tort claims of false arrest and false imprisonment"); Gulley v. Haymaker, No. 06-131, 2009 U.S. Dist. LEXIS 127839, at *35-36 (W.D. Pa. Mar. 4, 2009) (dismissing Section 1983 claims based on false arrest where arrest was based on probable cause and was lawful).

#### A. Whether the Stop was Lawful

The Fourth Amendment prohibits "unreasonable searches and seizures . . . ." U.S. Const. amend. IV. For purposes of the Fourth Amendment, a traffic stop of a motor vehicle constitutes a seizure of the occupants. Delaware v. Prouse, 440 U.S. 649, 653 (1979). "[F]or a seizure to be

---

[2] Plaintiff does not allege that Trooper Cullen used excessive force or otherwise acted unlawfully when he arrested or detained her. And, even if the Court were to construe Plaintiff's Complaint to assert such a claim, summary judgment dismissing the claim would be proper because Plaintiff presents no evidence to support such a claim. Indeed, Plaintiff concedes that she suffered no harm whatsoever during her arrest and that she was not fearful of Trooper Cullen at any time.

[3] Plaintiff's opposition papers tacitly acknowledge this. The only argument that Plaintiff offers in opposition to Defendants' motion is: "Defendant's [sic] motion for summary judgment should be denied as there was no probable cause for the stop or arrest." (Pl's Opp. Br., at 4) (capitalization altered).

reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." United States v. Robertson, 305 F.3d 164, 167 (3d Cir. 2002). However, "[u]nder the well-established exception to the warrant requirement set forth in Terry v. Ohio, 392 U.S. 1 (1968), . . .'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" United States v. Johnson, 592 F.3d 442, 447 (3d Cir. 2010) (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)).

In the context of a stop for a traffic violation, "so long as an officer can identify a statute that he believed to be violated and provide specific facts that 'support an objective determination of whether any officer could have possessed reasonable suspicion of the alleged infraction,' a subsequent stop is justified." United States v. Fleetwood, 235 Fed. App'x. 892, 897 (3d Cir. 2007) (quoting United States v. Delfin-Colina, 464 F.3d 392, 399 (3d Cir. 2006) (internal quotation marks omitted)); see Berkemer v. McCarty, 468 U.S. 420, 439 (1984) ("The usual traffic stop is more analogous to a so-called 'Terry stop' than to a formal arrest.") (citation omitted). "When assessing whether [a] vehicle stop was supported by reasonable suspicion, [the court] must consider the 'totality of the circumstances to determine whether the detaining officers . . . [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity." Johnson, 592 F.3d at 447 (quoting United States v. Brown, 448 F.3d 239, 246 (3d Cir. 2006)) (internal quotation marks and citations omitted).

Article I, Paragraph 7 of the New Jersey Constitution also prohibits unreasonable searches and seizures. See State v. Golotta, 837 A.2d 359, 363 (N.J. 2003). Consistent with the Fourth Amendment, "a police officer is justified in stopping a motor vehicle when he has an articulable and reasonable suspicion that the driver has committed a motor vehicle offense."

7

State v. Locurto, 724 A.2d 234, 238 (N.J. 1999) (internal citation and quotation marks omitted). Although the New Jersey Constitution "may provide additional protections against unreasonable searches and seizures than does the Fourth Amendment, in New Jersey, the observation of a motor vehicle violation constitutes a reasonable, articulable suspicion and justifies an investigatory stop." State v. Zimmerman, No. A-2857-04T1, 2005 N.J. Super. Unpub. LEXIS 87, at *11 (N.J. Super. Ct. App. Div. Dec. 28, 2005) (citing State v. Davis, 517 A.2d 859, 866-67 (N.J. 1986); State ex rel. D.K., 821 A.2d 515, 518-19 (N.J. Super. Ct. App. Div. 2003)) (internal citations omitted).

Under both the Fourth Amendment and Article I, Paragraph 7 of the New Jersey Constitution, Trooper Cullen had a reasonable articulable suspicion to believe that Plaintiff committed a traffic violation. He testified that he witnessed Plaintiff drifting out of her lane in violation of N.J. Stat. Ann. § 39:4-88b, which provides that "[w]hen a roadway has been divided into clearly marked lanes for traffic, drivers of vehicles shall . . . [drive] as nearly as practicable entirely within a single lane . . . ." Plaintiff does not present any evidence to refute Trooper Cullen's testimony.[4] Indeed, in the portions of Plaintiff's deposition testimony submitted to the Court, Plaintiff does not deny that she drifted out of her lane or present any evidence to suggest that drifting out of her lane would not constitute a violation of N.J. Stat. Ann. § 39:4-88b.[5] Thus, Trooper Cullen had a "particularized and objective basis for suspecting" that Plaintiff violated N.J. Stat. Ann. § 39:4-88b. Johnson, 592 F.3d at 447. Trooper Cullen's initial stop was

---

[4] Plaintiff asserts that there is no evidence on the video footage that she failed to keep her vehicle in her lane. However, Trooper Cullen testified that his original reason for stopping Plaintiff was his observation before turning on the camera that Plaintiff drifted out of her lane. Plaintiff does not present any evidence or any sworn statement contesting that she drifted between lanes before Trooper Cullen turned on the camera.

[5] The parties did not submit Plaintiff's entire deposition transcript. However, Plaintiff does not submit any testimony denying that she drifted out of her lane before Trooper Cullen turned on the camera. To survive summary judgment, Plaintiff must proffer competent evidence sufficient to establish that there is a genuine issue of material fact regarding her claim. McGovern v. City of Jersey City, No. 98-5186, 2005 U.S. Dist. LEXIS 38644, at *8 (D.N.J. Jan. 6. 2006). Plaintiff presents no such evidence.

therefore lawful.  See United States v. Finney, 316 Fed. App'x. 752, 756-757 (10th Cir. 2009) (collecting cases holding that a police officer's observation that vehicle drifted out of its lane was sufficient to establish reasonable articulable suspicion under the Fourth Amendment that driver violated law requiring drivers to remain in designated lane); Davis, 517 A.2d at 866-67 (holding that an officer's observation of a traffic violation is sufficient to justify a stop under the New Jersey Constitution).

### B.  Whether the Investigation Exceeded the Lawful Scope of the Stop

A lawful stop supported by reasonable articulable suspicion may nonetheless become unlawful "if it is excessively intrusive in its scope or manner of execution."  Johnson, 592 F.3d at 452.  Thus, to determine the lawfulness of a stop, the Court must also determine whether "the manner in which the stop was conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place.'"  Id. at 452 (quoting Terry, 392 U.S. at 19-20).  The Supreme Court has held that an investigative detention must "last no longer than is necessary to effectuate the purpose of the stop," and "the scope of the detention must be carefully tailored to its underlying justification."  Florida v. Royer, 460 U.S. 491, 500 (1983).  To determine whether an investigation is "reasonably related in scope" to its predicate circumstances, the court evaluates the officer's conduct in light of the crime at issue, whether the suspect poses an immediate threat to the officer or others, and other factors relevant to the reasonableness of the investigation.  Davis v. Bishop, 245 Fed. App'x. 132, 133 (3d Cir. 2007).

There is no evidence that Trooper Cullen's conduct was unreasonably related to his observation that Plaintiff committed a traffic violation by drifting out of her lane.  After stopping Plaintiff, Trooper Cullen approached the vehicle to question Plaintiff and check her driving documentation.  Upon approaching the vehicle, Trooper Cullen immediately detected the odor of

9

"consumed alcoholic beverage." (Ex. F in Supp. of Def.'s Motion for Summ. J.). He also noticed vomit in the empty back seat of the vehicle. He then asked Plaintiff for her documentation and whether she had been drinking. Plaintiff responded that she had been drinking. Trooper Cullen then asked Plaintiff to step out of the car, and he performed several field sobriety tests. Plaintiff consented to the tests and then returned to her car.

Plaintiff does not contend that Trooper Cullen used excessive (or any) force during this investigation. Nor does she present any evidence to suggest that Trooper Cullen's investigation was unreasonable in light of the fact that he initially stopped her for failing to maintain her lane. Indeed, as soon as Trooper Cullen approached the vehicle, he detected signs that Plaintiff may have been drinking, which reasonably prompted him to ask Plaintiff if she had been drinking. Plaintiff responded affirmatively, which reasonably lead Trooper Cullen to perform the field sobriety tests and then return Plaintiff to her car. There is no evidence that Trooper Cullen exceeded the scope of a reasonable investigation under the circumstances. Thus, the Court concludes that there is no basis for a jury to conclude that Trooper Cullen's conduct was not "reasonably related in scope to the circumstances which justified the [stop] in the first place." Johnson, 592 F.3d at 452.

### C. Whether there was Probable Cause to Arrest Plaintiff for Driving Under the Influence

Plaintiff nevertheless argues that after Trooper Cullen stopped her, he arrested her for driving while intoxicated without probable cause.[6]

---

[6] Plaintiff cannot argue that Trooper Cullen did not have reasonable articulable suspicion to stop Plaintiff once she drove away. It is unlawful for a person to operate a vehicle without copies of her license, registration, and proof of insurance. See N.J. Stat. Ann. § 39:3-29. Plaintiff left her documentation with Trooper Cullen. Thus, he had more than a reasonable suspicion that Plaintiff was violating the law. He had direct knowledge of her violation because he was in possession of her documentation while observing her operate a vehicle. Thus, the second stop was lawful.

The Fourth Amendment's prohibition on unreasonable seizures requires that police officers have probable cause to believe that a suspect committed a crime in order to arrest the suspect. Reedy v. Evanson, 615 F.3d 197, 211 (3d Cir. 2010) ("It is well-established that the Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause") (citation and quotation marks omitted). "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002). Significantly, a suspect's ultimate guilt or innocence is immaterial to whether the arresting officer had probable cause for the arrest. Dowling v. City of Philadelphia, 872 F.2d 136, 141 (3d. Cir. 1989).

Article I, Paragraph 7 of the New Jersey Constitution imposes a probable-cause requirement for warrantless arrests that is substantially similar to the Fourth Amendment requirement. See State v. Brown, No. A-17, 2011 N.J. LEXIS 81, at *20-29 (N.J. Jan. 25, 2011) (applying Fourth Amendment standard when construing Article I, Paragraph 7 of the New Jersey Constitution); State v. Basil, 998 A.2d 472, 480 (N.J. 2010) (same); see also N.J. Stat. Ann. § 39:5-25 (permitting warrantless arrest for driving while intoxicated if officer has probable cause to believe suspect was driving while intoxicated). To determine probable cause, New Jersey courts look to the "totality of the circumstances," and "view those circumstances from the standpoint of an objectively reasonable police officer." Basil, 998 A.2d at 480-81 (internal quotation marks and citations omitted).

Under both the Fourth Amendment and the New Jersey Constitution, Trooper Cullen had probable cause to arrest Plaintiff for driving while intoxicated in violation of N.J. Stat. Ann. § 39:4-50. First, Trooper Cullen detected the odor of consumed alcohol in the vehicle and

observed vomit in the empty back seat. Second, Plaintiff admitted to drinking at the party from which she was driving home. Third, Plaintiff was unable to complete at least two of the field sobriety tests.[7] Fourth, and perhaps most compellingly, Trooper Cullen did not arrest Plaintiff until after she tried to drive away even though Trooper Cullen told her to wait in her vehicle and even though Trooper Cullen had taken Plaintiff's license, registration, and proof of insurance with him. Trooper Cullen testified that it was the aggregation of those circumstances that led him to believe that Plaintiff was driving while intoxicated. Based on those undisputed facts, no reasonable jury could find that Trooper Cullen did not have probable cause to arrest Plaintiff for driving while intoxicated.[8] See D'Arrigo v. Gloucester City, No. 04-5967, 2007 U.S. Dist. LEXIS 44316, at *27 (D.N.J. June 19, 2007) (finding no genuine issue of material fact regarding probable cause under the Fourth Amendment to arrest suspect for driving while intoxicated because suspect was driving fast and admitted that he had been drinking); State v. Slizewski, A-3408-07T4, 2010 N.J. Super. Unpub. LEXIS 949, at *24-25 (N.J. Super. Ct. App. Div. Apr. 29, 2010) (upholding finding of probable cause based on officer's observation that driver smelled of alcohol, was disheveled, and had difficulty performing field sobriety tests).

---

[7] Plaintiff argues that her performance on the sobriety tests was affected by her high heel shoes. However, the video footage shows that Plaintiff was initially unable to complete the alphabet test, which is obviously unaffected by her footwear. The video footage also shows that Plaintiff was unable to complete the one-legged test even after she took off her shoes. Thus, the undisputed facts establish that Plaintiff could not complete at least two of the tests notwithstanding her footwear.

[8] After her arrest, Plaintiff took a breathalyzer test that showed her blood-alcohol content to be below the legal limit. That fact does not create a material issue of fact as to probable cause for the initial arrest. See Dowling, 855 F.2d at 141 ("The proper inquiry in a . . . claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense"); State v. Weber, 532 A.2d 733, 734 (N.J. Super. Ct. App. Div. 1987) (finding probable cause for an arrest even though the suspect ultimately registered a blood-alcohol level of 0.013 percent).

**IV.    CONCLUSION**

Because Trooper Cullen lawfully stopped and arrested Plaintiff, Plaintiff's civil claims against Defendants fail.  The Court therefore grants Defendants' motion for summary judgment dismissing the Complaint.  An appropriate Order shall enter.


Dated: 2/17/11                                                         /s/ Robert B. Kugler
                                                                                 ROBERT B. KUGLER
                                                                                 United States District Judge